Nancy E. POFFENBERGER and Lynn E. Poffenberger, her husband, and Robert E. Stricker and Louise Stricker, his wife,

v.

Alan GOLDSTEIN and the Dauphin County Tax Claim Bureau.

Appeal of Alan Goldstein.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 13, 2000.

Decided May 22, 2001.

Norman M. Yoffe, Camp Hill, for appellant.

Robert G. Radebach, Halifax, for appellees.

Before SMITH, LEADBETTER, Judges, and RODGERS, Senior Judge.

LEADBETTER, Judge.

Alan Goldstein appeals from the order of the Court of Common Pleas of Dauphin County quieting title in the Poffenbergers and Strickers to approximately twenty-three acres of undeveloped wooded land located on Peter's Mountain in Dauphin County.

In 1997, Nancy E. and Lynn E. Poffenberger and Robert E. and Louise Stricker (collectively Poffenbergers) filed the underlying quiet title action against Alan Goldstein and the Dauphin County Tax Claim Bureau (Bureau). In that action, the Poffenbergers sought a declaration that they are the fee simple owners of approximately twenty-three acres of vacant mountain land and that any title, claim, or interest that Goldstein acquired to such property in a 1985 tax sale is invalid. In response to the Poffenbergers' complaint, Goldstein averred, among other things, that the Poffenbergers' record title gives them ownership to only thirteen of the twenty-three acres at issue. In new matter, Goldstein averred that the quiet title action was barred by the statute of limitations applicable to judicial sales.

During the bench trial that followed, the Poffenbergers established their record title to thirteen acres of the property at issue through a chain of deeds beginning with a recorded deed from Oliver B. Simmons to Catherine G. Harrigan, dated August 16, 1907. Thereafter, in 1908, Harrigan conveyed property, which totaled in excess of 200 acres (including the twenty-three acres at issue), to Mrs. A.B. Lee by recorded deed (hereafter Lee deed). In 1927, a portion of the Lee tract, which included only thirteen of the disputed acres, was conveyed by recorded deed to L.J. Stricker, father of Nancy Poffenberger and Robert Stricker. Stricker used the land acquired from Lee for a sawmill operation. Stricker died intestate in 1955 and the Poffenbergers inherited the property through the intestate transfer of the real estate following Stricker's death. In conjunction with the underlying quiet title action, the Poffenbergers had the property to which they claim title professionally surveyed, as a result of which the property was officially mapped and assigned Tax Parcel No. 43–003–027 (Parcel 27).

Carl Poffenberger, P.E.,[1] a surveyor, testified that thirteen of the twenty-three disputed acres are described and conveyed in the deed from Lee to Stricker. According to the surveyor, however, the other ten acres at issue are not included in the metes and bounds of that deed. Specifically, the surveyor noted that the northern boundary of the property as described in Lee's deed extended 792 feet; however, the deed from Lee to Stricker describes the northern boundary of the property as extending only 333 feet. Despite the fact

[1] Carl Poffenberger is Lynn Poffenberger's brother.

that the Lee to Stricker deed conveyed title to only thirteen acres of the property at issue, the surveyor opined that the Poffenbergers also owned the other ten acres. The surveyor reached that conclusion based upon several factors.

The first factor leading the surveyor to the conclusion that the Poffenbergers owned the remaining ten acres was the following description in the Stricker deed regarding the northern boundary of the property:

> Beginning at a stone on the west side of the lands of John Francis McKelvy; thence North, four and one-half (4½) degrees west three hundred thirty eight (338) perches to a stone on Peter's Mountain; thence by lands of W.B. Etzweiler, North sixty-five (65) degrees east, twenty and two-tenths (20.2) perches; *thence by lands of L.J. Stricker,* south two (2) degrees, east fifty-seven (57) perches to stones; ...

Defendant [Goldstein's] Exhibit 5 (emphasis added). The surveyor assumed that a conveyance probably took place between Lee and Stricker prior to 1927 that was not reflected by a written deed, but which would explain the description *"thence by lands of L.J. Stricker"* in the Stricker deed.. The other factors that the surveyor relied upon to conclude that the Poffenbergers inherited all twenty-three acres from Stricker were: 1) it was commonplace for sawmill operators to purchase land purely for timber harvest without recording the transaction via a deed, 2) the deeds for the adjoining properties did not encompass the additional ten acres, and 3) the northern boundary in the Lee deed extended the full 792 feet.

James Hoffman, the Bureau's Deputy Director, testified that Goldstein purchased Tax Parcel No. 43–3–1 at a tax sale in 1985. Although it is not completely clear from the record, it appears that Parcel 43–3–1 consists of more than 200 acres. Whatever the total size, it includes the disputed twenty-three acres in Parcel 27. Prior to Goldstein's purchase, the assessed owner of the property was Carl Coleman, who had obtained the property in a tax sale in 1964. The assessed owner prior to Coleman's purchase was the Thomas Elder Estate. Because the Bureau's records were incomplete for that time period, the Bureau had no information as to whether the requirements of the Real Estate Tax Sale Law (Tax Sale Law)[2] were complied with when the property was sold in 1964.

According to another Bureau employee, a property record card was created in 1961, which indicated that the Thomas Elder Estate was the owner of 247 acres of land, later identified as Parcel 43–3–1. However, other than the property record card, the Bureau had no evidence to confirm Elder's ownership of the property. Neither L.J. Stricker nor his heirs were given notice of either sale.

Finally, Goldstein's testimony established that he purchased Tax Parcel No. 43–3–1 in 1985 at a tax sale and has paid the taxes assessed on the property ever since. Goldstein never had a survey conducted following his purchase of the property at tax sale; however, he did have a title search, which failed to reveal that the Stricker heirs had any interest or claim to the property purchased at tax sale.

Based on the evidence presented, the trial court concluded that the Poffenbergers had established *prima facie* evidence of title to the entire disputed twenty-three acres. The trial court also concluded that since there was no evidence to demonstrate that the 1964 tax sale complied with the notice requirements of the Tax Sale

---

**2.** Act of July 7, 1947, P.L. 1368, No. 542, *as* *amended,* 72 P.S. §§ 5860.101—5860.803.

Law, that sale was invalid, rendering the subsequent sale to Goldstein invalid as well. Consequently, the trial court held that Goldstein failed to establish a title superior to that established by the Poffenbergers. The trial court also rejected Goldstein's argument that the statute of limitations barred any challenge to the tax sale. Although the trial court denied Goldstein's subsequent post-trial motions, it did modify its order to provide that the deed to Goldstein was deemed to be void and of no effect only so far as it purported to convey title to the twenty-three acres contained in Parcel 27. The instant appeal followed.

■ To prevail in an action to quiet title, the plaintiff must demonstrate title by a fair preponderance of the evidence. As this court stated in *Pennsylvania Game Commission v. Ulrich*, 129 Pa. Cmwlth. 376, 565 A.2d 859 (1988), "this 'places upon the plaintiff the burden of proving a prima facie title, which proof is sufficient until a better title is shown in the adverse party.'" *Id.* at 379, 565 A.2d 859 [*quoting Hallman v. Turns*, 334 Pa.Super. 184, 482 A.2d 1284, 1287 (1984)]. *See also Moore v. Department of Envtl. Res.*, 129 Pa.Cmwlth. 628, 566 A.2d 905, 907 (1989).

■ In the instant case, it appears that both parties claim title by recorded deed (and also by an unrecorded purchase in the case of Poffenbergers) to the disputed acreage. Specifically, as demonstrated by the evidence at trial, the Poffenbergers' title to at least thirteen of the twenty-three acres stems from a chain of recorded deeds dating back to the early 1900's. On the other hand, Goldstein's title stems from his purchase of Parcel 43–3–1 at tax sale, which includes the twenty-three acres at issue. On appeal, Goldstein contends that the 1964 and 1985 tax sales divested the Poffenbergers of title to the property and the failure to challenge the tax sales during the applicable statute of limitations bars the present attempt to quiet title to the property. In making this argument, Goldstein characterizes the sales as "judicial sales" subject to the six-month statute of limitations set forth at 42 Pa.C.S. § 5522(b)(5).[3]

■ Although Goldstein incorrectly characterizes the 1985 tax sale as a "judicial sale," subject to a six-month statute of limitations, it is clear that the time period in which to challenge the 1985 tax sale has run.[4] In 1985, the statute of limitations applicable to an action to set aside a tax sale was the six year period of limitations

---

3. We note that Section 607(g) of the Tax Sale Law, *as amended,* 72 P.S. § 5860.607(g), establishes the conclusiveness of tax sales confirmed absolutely. However, that subsection provides an exception for challenges "with respect to the giving of notice" as required by the Tax Sale Law. *See generally In re Property of Cont'l Motels, Inc.,* 32 Pa.Cmwlth. 429, 379 A.2d 897, 899 (1977).

4. Reference to the judicial sale of delinquent taxable property in earlier versions of Section 308 of the Tax Sale Law, *as amended,* 72 P.S. § 5860.308, was deleted by the Act of July 10, 1980, P.L. 417. In 1985 (as is true of the present), the Bureau could petition the court of common pleas for permission to hold a

judicial sale only after failing to obtain the upset price at tax sale. *See* Sections 610—612.1 of the Tax Sale Law, *as amended,* 72 P.S. §§ 5860.610–5860.612–1. We also note that Section 1991 of the Statutory Construction Act, 1 Pa.C.S. § 1991, defines a "judicial sale" as "[a] sale conducted by an officer or person authorized for the purpose by some competent tribunal." Therefore, since the 1985 sale was conducted by the Bureau pursuant to its statutory authority under the Tax Sale Law and not by order of court pursuant to the provisions governing judicial sales in the Tax Sale Law, we conclude the sale was not a judicial sale subject to the shorter period of limitations.

found at 42 Pa.C.S. § 5527.[5] As more than six years have passed since the 1985 sale, we conclude that the procedural regularity of that tax sale is beyond challenge. Similarly, whatever statute of limitations applied in 1964, it was long past by 1997. Therefore, Goldstein is correct that the trial court erred in invalidating both tax sales on the basis of deficiencies in notice.[6] Notwithstanding this conclusion, we must hold that the 1985 tax sale cannot act to divest the Poffenbergers of title to the land Lee conveyed to Stricker in 1927 by recorded deed.

This court is not aware of any legal authority, nor have the parties cited to any authority, which would provide that a municipal tax sale can divest the owner of property, who can establish a valid chain of title through recorded deed and has paid all assessed taxes on such property, of title to the property by improperly listing the property for upset sale. Clearly, in these circumstances, the upset sale of a portion of the acreage described in the recorded Stricker deed is void *ab initio*. The fact that a petition to set aside the tax sale was not filed within the applicable statute of limitations does not command a finding in Goldstein's favor.

 To find that Goldstein established title superior to that held by the Poffenbergers via the Stricker deed would be to ignore the purpose and effect of Pennsylvania's recording statutes,[7] which are intended to protect bona fide purchasers. *See generally, Land v. Pennsylvania Housing Finance Agency*, 101 Pa.Cmwlth. 179, 515 A.2d 1024 (1986). The recording of a deed serves to provide public notice in whom the title resides. *Mancine v. Concord–Liberty Sav. & Loan Ass'n*, 299 Pa.Super. 260, 445 A.2d 744 (1982). An unrecorded deed is deemed to be void as to any subsequent bona fide purchaser. To be deemed to be a bona fide purchaser, however, one must pay valuable consideration, *have no notice of the outstanding rights of others,* and act in good faith. *Carnegie Natural Gas Co. v. Braddock*, 142 Pa.Cmwlth. 383, 597 A.2d 285, 288 (1991).

 In the present case, the recording of the Stricker deed precludes Goldstein from acquiring bona fide purchaser status with respect to the thirteen acres described therein. As a result, in these circumstances, Goldstein, who cannot be deemed a bona fide purchaser with respect to the thirteen acres, cannot establish title superior to that held by the Poffenbergers. However, as the Poffenbergers' claim to the other ten acres rests upon an unrecorded purchase, which fails to provide subsequent purchasers, such as

---

**5.** Section 5527 provides that "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." 42 Pa.C.S. § 5527. After reviewing all other periods of limitation set forth in the Judicial Code, we conclude that § 5527 is the only applicable period of limitation.

**6.** Although not raised, the trial court erred in placing the burden on Goldstein, in this action to quiet title, to demonstrate that the notice requirements of the Tax Sale Law had been complied with. In general, in the context of a proceeding to set aside an upset sale, the burden to demonstrate compliance with the Tax Sale Law lies with the county tax claim bureau, not the challenger or purchaser. *See generally Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285 (Pa. Cmwlth.1996).

**7.** Namely, Section 1 of the Act of May 12, 1925, P.L. 613 and Section 1 of the Act of June 12, 1931, P.L. 558, *as amended*, 21 P.S. § 351, and Section 1 of the Act of March 18, 1775, 1 Sm.L. 422 (repealed in part by Section 3 of the Act of August 4, 1955, P.L. 303) and Section 1 of the Act of May 19, 1893, P.L. 108, *as amended*, 21 P.S. § 444.

Goldstein, with notice[8] of that title, Goldstein acquired title superior to that of the Poffenbergers when he purchased the property at tax sale in 1985. Accordingly, we conclude the trial court erred in quieting title in the Poffenbergers to the ten acres not described in the Stricker deed.

## ORDER

AND NOW, this 22nd day of May, 2001, in accordance with the foregoing opinion, the order of the Court of Common Pleas of Dauphin County is REVERSED to the extent it quiets title to approximately ten acres, which are not described within the metes and bounds of the deed dated February 1, 1927, from Ella M. Lee to L.J. Stricker, and recorded in Dauphin County Deed Book F, Volume 21, page 87, in Nancy E. and Lynn E. Poffenberger and Robert E. and Louise Stricker. Title to the aforesaid acres, which are encompassed in Tax Claim Bureau Deed dated February 4, 1986, between the Dauphin County Tax Claim Bureau and Alan Goldstein and recorded in Book 719, page 67, is quieted in Alan Goldstein. In all other respects, the order of the Court of Common Pleas is AFFIRMED.

---

**8.** In *Carnegie Natural Gas Co. v. Braddock,* 142 Pa.Cmwlth. 383, 597 A.2d 285 (1991), this court also noted that the party asserting unrecorded rights in property has the burden of proving notice. *Id.* at 288. Here, the record is devoid of evidence that Goldstein had notice, either actual or constructive, of the Poffenbergers' alleged ownership of the ten acres at issue.