**Vandelay Holdings, LLC v. Jackson**

*Walter S. Zimolong, III* and *Jessica Walker*, for appellant

*Alfonso G. Madrid*, for appellee

RIZZO, *J.*, August 2, 2013—The appellant, Vandelay Holdings, LLC ("Vandelay Holdings") appeals from the court's order of June 14, 2013, denying appellant's requested post-trial relief from the court's findings of fact

and conclusions of law issued on April 1, 2013, in which the court found in favor of the appellee, Dwight Jackson, and against appellant Vandelay Holdings on an ejectment action brought by appellant, and found in favor of the appellee on his counterclaim quiet title action against Vandelay Holdings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff and counter-claim defendant, Vandelay Holdings, commenced this action on August 21, 2009, against defendant and cross-claim/counter-claim plaintiff Dwight Jackson.[1] Jackson joined cross-claim defendants Pamela Carpenter, Steven K. Lloyd, and James Melasecca as additional defendants on November 16, 2009. These claims arise out of an action to eject Jackson from the premises at 2028 N. 15th St., Philadelphia, PA 19121 ("the property"), where Jackson resides. Jackson instituted a counterclaim against Vandelay Holdings to quiet title to the property and alleging both conspiracy to commit fraud/theft by deception and unfair or deceptive practices. Jackson also asserted cross-claims against additional defendants Carpenter, Lloyd, and Melasecca for conspiring to commit fraud/theft by deception with Vandelay Holdings.

On October 11, 2011, cross-claim defendants Lloyd and Melasecca filed a motion for summary judgment, which was denied on December 22, 2011.

---

1. The original caption named "Dwight Jackson and all Occupants" as defendants. The only other occupant was Jackson's wife, Marilyn Miller-Thompson. Counsel for Jackson filed a suggestion of death for Ms. Miller-Thompson on February 11, 2012.

A bench trial commenced on February 13, 2012, and on April 1, 2013, this court found in favor of the appellee, Dwight Jackson, and against the appellant, Vandelay Holdings, on appellant's action for ejectment. The court also found in favor of Jackson on his counter-claim to quiet title, making him the lawful legal owner of the property.

The court found in favor of cross-claim defendants Lloyd and Melasecca and against cross-claim plaintiff Jackson on all counts of Jackson's amended joinder complaint. The court found against cross-claim defendant Pamela Carpenter pursuant to Pennsylvania Rules of Civil Procedure 218 — Party Not Ready When Case is Called for Trial.[2] The court also found in favor of counter-claim defendant Vandelay Holdings and against counter-claim plaintiff Jackson as to Jackson's claims of conspiracy to commit fraud/theft by deception and for unfair or deceptive practices.

The plaintiff Vandelay Holdings subsequently filed a timely motion for post-trial relief on April 11, 2013.[3] Following oral argument on May 31, 2013, this court denied said motion on June 14, 2013. Appellant then filed the instant appeal on June 18, 2013. On June 20, 2013, this court requested a statement of matters complained of on appeal in accordance with Rule 1925(b) of the

---

2. Cross-claim defendant Pamela Carpenter never appeared at trial. Pursuant to section (c), this court found that Carpenter was not ready without satisfactory excuse and entered a nonsuit judgment against her. *See Bostick v. Schall's Brakes and Repairs, Inc.*, 725 A.2d 1232 (Pa. Super.1999) ("It is well settled that the mere failure to appear for trial is a ground for the entry of nonsuit."), *reargument denied, appeal denied*, 743 A.2d 912.

3. Plaintiff did not file an accompanying memorandum of law as required by this court's scheduling order dated April 18, 2013.

Pennsylvania Rules of Appellate Procedure. On June 26, 2013, Appellant submitted eight issues for appeal that are summarized below into two categories.

The facts of the case are as follows:

The instant dispute concerns two parties who each claim to have legal ownership of the property. Vandelay Holdings, a Pennsylvania registered limited liability company doing business in real estate development, claims ownership through purchasing the property from Pamela Carpenter on August 6, 2009, for $22,500.00. (Am. compl. ¶4; pl.'s ex. 1.). The deed conveying the property to "Vandelay Holdings, LLC" is dated the same and was duly recorded in the Office for the Recorder of Deeds of Philadelphia County on or about August 10, 2009. (*Id.*)

Seventeen years prior, however, on or about July 2, 1992, Dwight Jackson bought the property from Carpenter for $1,000.00. (Second am. answer to the compl. ("Am. Answer") ¶¶19, 21.) Jackson received a deed to the property from Carpenter, (Pl.'s ex. 6), which was produced at trial, though never recorded. (Am. Answer ¶22.) Jackson paid Carpenter in installments over the course of five months. (Trial tr. vol. 1, 165:4-167:3, February 14, 2012.) Jackson also produced at trial five separate receipts for his transactions with Carpenter. (Jackson Ex. 8.) Four are signed by Jackson and Carpenter; one is signed by Jackson and Carpenter's alleged husband. (*Id.*)

Carpenter was operating under letters of administration issued to her from the estate of Dorothy Jones, her deceased mother. (Am. Answer ¶20.) Carpenter failed to appear for

any proceedings in the instant case and her attorney has been unable to get into contact with her.

Under Carpenter's ownership, the property was in a state of extraordinary disrepair, was a known eyesore in the community, (Trial tr. vol. 1, 86:11), and was inhabited by drug users and known as a "hit house". (*Id.* at 105:6-18.) Prior to living in the property, Jackson made improvements to render the dilapidated property habitable and was seen in the property on multiple occasions. (*Id.* at 97:18-23, 104:18-24.) Jackson testified that because drug users had inhabited the property, he had to clean each room of the house individually. (*Id.* at 168:18-20, 169:11-15.) The property was therefore not fit for immediate occupation. (*Id.* at 168:21-169:2.)

Jackson and his late wife, Marilyn Miller-Thompson, began living in the property in 1996. (Am. answer ¶23.) Jackson has continually resided there from 1996 until the time of this trial. (Am. answer ¶24.) Over the years, the City of Philadelphia sent property tax bills in the name of the late Dorothy Jones to the property, notwithstanding Jackson's presence in the property. (Trial tr. vol. 1, 69:10-16.) Jackson has paid these bills consistently, (Am. answer ¶26), but never alerted the city that he was the owner of the property. (Trial tr. vol. 1, 69:21-25.) Though Jackson does have electric service to the property provided by PECO, (*Id.* at 73:8-14), he has been inconsistent in payment for water services from the City of Philadelphia. Even though he has used water and sewage at the property since at least 1996, he did not receive a bill until 2009. (*Id.* at 70:7-73:4.)

Jackson's open possession is evidenced by the series of improvements made to the property. Jackson produced two witnesses at trial attesting to the improvements rendered by him to the property, the condition of the property at the time he alleges to have purchased the property, and his long-standing residence of the property. Said witnesses were Estelle Wilson, a longtime neighbor of Jackson and the local block captain, (*Id.* at 85:8-22), and Vera Moore, whose house is directly across the street from the property. (*Id.* at 103:14-16.) Both Wilson and Moore have lived in their respective properties for over 65 years. (*Id.* at 82:21-23, 104:13-14.)

Wilson testified that she has known Jackson for more than 16 years. (*Id.* at 85:20-22.) Prior to Jackson residing there, trash covered the abandoned Property, it was missing windows, and it was in a general state of disrepair. (*Id.* at 86:7-12, 87:2-88:10.) She testified that Jackson put new windows in himself, (*Id.* at 87:11-19), that the windows contained curtains, (*Id.* at 92:10-19), and that these windows and dressings were present at the time of the filing of this lawsuit and in 2009. (*Id.* at 89:1-9, 92:10-19.) She also testified that the front door was present in 2009. (*Id.* at 91:25-92:6.) Wilson stated that Jackson "worked hard" on the house, (*Id.* at 96:14-17), that he kept the property clean, and that he participated in neighborhood events such as clean-ups. (*Id.* at 98:2-9.)

Moore testified that she met Jackson roughly 17 to 18 years ago, when he took control of the property. (*Id.* at 104:15-17.) Moore explained that the property was "a mess" when Jackson began appearing at it and fixing

it, (*Id.* at 106:3-10), partially because after Carpenter's mother vacated the property, it was used by drug users as a place to abuse drugs. (*Id.* at 105:6-18.) Moore further testified that the property did not look like it does now: the front door was a different color and many windows that were missing or broken had been replaced. (*Id.* at 106:6-10.) She remembered that Jackson replaced the windows at least 10 years prior to her testimony in 2012. (*Id.* at 107:16-18.) Moore also explained that the property looked occupied in 2009: she regularly saw Jackson, his wife, his son, and grandson at the property; lights on in the windows; and Jackson cleaning things up around the yard. (*Id.* at 108:8-12, 109:2-111:4.)

Vandelay Holdings became interested in purchasing the property when a competitor, Cornerstone Properties, could not complete the sale of the property and contacted James Melasecca to buy it instead. (*Id.* at 55:3-22.) Melasecca, one of the principals of Vandelay Holdings, testified that Cornerstone Properties told him the property was a shell. (*Id.* at 56:7-10.) At all times relevant hereto, Melasecca and Steven K. Lloyd were members of Vandelay Holdings. Vandelay Holdings simply adopted the terms of the contract that Cornerstone Properties had negotiated with Carpenter. (*Id.* at 64:7-14.) No evidence was presented at trial that Cornerstone Properties inspected the property or made any investigation as to the condition of the property.

Prior to the closing date with Carpenter, Vandelay Holdings hired Horizon Abstract to perform a title search for the property. (*Id.* at 36:3-18.) The title report stated that the record owner of the property was Pamela Carpenter,

administratrix under the will of Dorothy Jones, and that the last previous transfer of the property occurred in 1948. (*Id.* at 37:2-13.) The first time a representative of Vandelay Holdings spoke to Carpenter was at the settlement on the closing date of the sale of the property, August 9, 2009. (*Id.* at 43:2-7.)

Vandelay Holdings' amended complaint states that, "Prior to purchasing the property, a representative of the plaintiff visited the subject property on several separate occasions and did not see any occupants residing therein." (Am. compl. ¶6.) Contrary to such allegations, Melasecca testified at trial that he only physically observed the property once (he did not go inside, or try to go inside) and that he had driven by the property. (Trial tr. vol. 1, 38:15-22, 39:1-3.) The amended complaint further states, "Prior to purchasing the property, a representative of the plaintiff visited the subject premises and observed the windows of the first floor replaced with cinderblocks and entrance barricaded shut." (Am. compl. ¶7.) Testimony at trial, however, supports that although the property's back windows are cinder-blocked and the rear door boarded up, (Trial tr. vol. 1, 41:5-10), the front of the property has fairly new windows with window dressings, and electric lights can be seen going on and off inside the house. (*Id.* at 91:1-92:20, 93:14-94:3.) Jackson testified that he bought windows through a program offered by the Church of the Advocate, a local church that gave homeowners the chance to buy windows in bulk. (*Id.* at 170:23-171:4.) He bought them around 1996 or 1997 and installed them over time. (*Id.*)

Roughly three or four days after the closing, representatives of Vandelay Holdings visited the property. (*Id.* at 43:20-44:6.) Melasecca testified that he intended to change the locks. (*Id.* at 43:24-44:2.) While at the door attempting to gain entry, Jackson, being at home, immediately stuck his head out of the second story window to see what was occurring. (*Id.* at 44:3-6.) Melasecca stated to Jackson that he was the owner of the property; Jackson disputed this and stated that he, in fact, was the owner. (*Id.* at 45:4-10.)

Melasecca had no keys to the property because Carpenter had no keys to provide to him. (*Id.* at 159:5-8.) He testified that he had asked Carpenter if she had any belongings or personal things in the property, and that she had told him no. (*Id.* at 159:9-17.) He did not ask if anyone was living in the property, but testified she told him the property was vacant. (*Id.* at 159:18-23.)

After Melasecca left, Jackson and his wife confronted Carpenter. (Am. answer ¶¶33-5.) Jackson testified that she confirmed she had sold the property to him and that Carpenter claimed she told someone Jackson owned the property. (*Id.*; Trial tr. vol. 1, 74:12-75:2.) Carpenter never identified the people involved in the sale or to whom she spoke as a representative of Vandelay Holdings. (Trial tr. vol. 1, 74:12-75:2.)

## ISSUES ON APPEAL[4]

The matters complained of on appeal are summarized

---

4. This court ordered a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). This was timely received and is attached hereto as exhibit "A".

below.

1. The trial court committed an error of law by finding against appellant in the action for ejectment and in favor of appellee to quiet title.

a. The trial, court committed an error of law by finding that Vandelay Holdings was not a bona fide purchaser for value.

b. The trial court committed an error of law in not applying the clear and convincing standard to the issue of constructive notice.

2. The trial court abused its discretion by permitting Vera Moore and Estelle Wilson to testify at trial.

## LEGAL DISCUSSION

### I. THE TRIAL COURT CORRECTLY FOUND AGAINST APPELLANT IN THE ACTION FOR EJECTMENT AND IN FAVOR OF APPELLEE TO QUIET TITLE BECAUSE APPELLANT WAS UNABLE TO ESTABLISH SUPERIOR TITLE TO THAT OF APPELLEE.

An action for ejectment can be maintained by an out-of-possession plaintiff if they have a "right to immediate possession with the concomitant right to demand that the defendant vacate the land." *Plauchak v. Boling*, 653 A.2d 671, 674 (Pa.Super. 1995) (citing *Grossman v. Hill*, 122 A.2d 69, 71 (Pa. 1956)). To succeed at an action for ejectment:

[P]laintiff must show title at the commencement of the

action and can recover, if at all, only on the strength of his own title, not because of weakness or deficiency of title in the defendant. This rule places upon the plaintiff the burden of proving a prima facie title, which proof is sufficient until a better title is shown in the adverse party.

*Hallman v. Turns*, 482 A.2d 1284, 1287 (Pa.Super. 1984) (citations omitted).

This same burden shift is applicable to an action to quiet title. *See Commonwealth, Pa. Game Comm'n v. Ulrich*, 565 A.2d 859, 861 (Pa.Cmwlth. 1988) (quoting *Hallman*, 482 A.2d at 1287). The plaintiff need only demonstrate title "by a fair preponderance of the evidence." *Poffenberger v. Goldstein*, 776 A.2d 1037, 1041 (Pa.Cmwlth. 2001).

In the instant dispute, both parties claim title by way of individual deeds to the property transferred by Pamela Carpenter. Since Jackson never recorded his deed, Vandelay Holdings argued at trial that their deed is protected under the Pennsylvania Recording Statute, 21 Pa.C.S.A. §351("Recording Statute"), and thus superior to that of Jackson. In finding that Vandelay Holdings does not have superior title, this court correctly found that Vandelay Holdings is not a bona fide purchaser, and thus not entitled to protection of the Recording Statute. This court also correctly refused to apply the "clear and convincing" standard to the issue of whether Vandelay Holdings had constructive notice of Jackson's possession because Jackson did not adversely possess the property, but rather had a deed to the property, and the burden of proof to win an action to quiet title is much lower than that

of an ejectment action.

A. THE TRIAL COURT CORRECTLY FOUND THAT VANDELAY HOLDINGS IS NOT A BONA FIDE PURCHASER FOR VALUE ENTITLED TO PROTECTION UNDER THE RECORDING STATUTE.

The Recording Statute "protects subsequent purchasers by giving a subsequent bona fide purchaser for value without notice of a prior transaction priority over the equitable estate of the first owner." *Long John Silver's, Inc. v. Fiore*, 386 A.2d 569, 573 (Pa.Super. 1978) (citing *Lund v. Heinrich*, 189 A.2d 581 (Pa. 1963)). A bona fide purchaser is defined as "one who pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith." *Carnegie Natural Gas Co. v. Braddock*, 597 A.2d 285, 288 (Pa.Cmwlth. 1991). "Either actual or *constructive notice is sufficient* to prevent the subsequent purchaser from acquiring the status of a bona fide purchaser." *Long John Silver's*, 386 A.2d at 573 (emphasis added) (citing *Ovelry v. Hixson*, 82 A.2d 573 (Pa.Super. 1951)).

The laws of the Commonwealth of Pennsylvania recognize open and continuous possession of the premises as constructive notice to subsequent purchasers. *See Kinch v. Fluke*, 166 A.905 (Pa. 1933); *Malamed v. Sedelsky*, 80 A.2d 853(Pa. 1951). In *Kinch v. Fluke*, the prior vendor of the property had taken out mortgages on the property *after* having sold the property via written agreement (unrecorded) to appellants. Upon discovery of the mortgages some years later, appellants brought an action

to remove a cloud on the title[5] against the subsequent mortgagees who had placed liens on the property. At the outset of their analysis, the court noted that:

> [O]pen, notorious, and continued possession...is evidence of title, and, in a certain sense, is a substitute for recording the agreement of purchase, and is sufficient to put a subsequent purchaser or mortgagee on inquiry. A prospective purchaser is required to make inquiry of those in possession, and, failing to do so, is affected with constructive notice of all that such inquiry would have disclosed.

*Id.* at 906 (citations omitted). Having never inquired of the appellants, who were in possession, as to the nature of their title, the mortgagees took constructive notice of appellants' rights. *Id.*

The court reaffirmed this rule in *Malamed v. Sedelsky*. In *Malamed*, a judgment creditor[6] brought an action to quiet title against defendants who, unbeknownst to the plaintiff, had an unrecorded deed at the time of judgment and were in exclusive possession of the property. In denying the plaintiff protection of the Recording Statute, the court held that:

> Such possession by the [defendants] was sufficient

---

5. An action to remove a cloud on the title was the predecessor to the modern Pennsylvania Rules of Civil Procedure's action to quiet title. *Bruker v. Burgess and Town Council*, 102 A.2d 418, 420 (1954) ("The action to quiet title is a new form of action, created as a consolidation of a large number of independent actions and proceedings, mostly statutory, designed to remove clouds on title....").

6. Subsequent "holders of a judgment" receive the same protection under the Recording Statute as subsequent purchasers and mortgagees. 80 A.2d at 855.

constructive notice, for it has long been settled that it is the duty of a purchaser of real property to make inquiry respecting the rights of the party in possession and failing to do so they are affected with constructive notice of such facts as would have come his knowledge in the proper discharge of that duty.

80 A.2d at 855 (citations omitted). As such, the Recording Statute did not protect the record titleholder and the court found for defendants. *Id.*

In the instant case, appellant cites to *Pato v. Cernuska*, 493 A.2d 758 (Pa.Super. 1985), for the proposition that constructive notice does not defeat a purchaser's status as a bona fide purchaser for value. (Post-trial mot. of pl. ¶9.) Appellant contends that the court in *Pato* rejected *Malamed*'s argument. (Post-trial mem. of pl. 4.) To the contrary, however, *Malamed* is distinguishable: *Malamed* concerned the effect of constructive notice from possession negating the status of a bona fide purchaser. The issue at hand in *Pato*, however, was a dispute over the size of a tract of land conveyed in two separate deeds. The deeds incorrectly stated the distance between two monuments on the property. In resolving who had superior title, the question of whether the later-in-time purchaser was a bona fide purchaser was a marginal issue "irrelevant to the issue in this case." *Pato*, 493 A.2d at 760. The *Pato* court actually cites *Malamed* authoritatively for the position that appellant opposes here: that "it is the duty of a purchaser of real property to make inquiry respecting the rights of the party in possession and failing to do so they are affected with constructive notice of such facts as would have [been

disclosed]." *Id.* at 760 (quoting *Malamed*, 80 A.2d at 855) (internal quotation marks omitted).

Appellant also disputes the existence of a duty to inquire as to the property interests of those in possession. This rule was recently discussed at the federal level in *In re Fowler*, 425 B.R. 157 (Bankr. E.D. Pa. 2010). The court there had to determine whether subsequent purchasers/mortgagees were indeed bona fide purchasers for value without notice of plaintiffs' unrecorded interest in the property. In applying Pennsylvania common law, including *Kinch* and *Malamed*, the court noted the long line of Pennsylvania cases that hold:

> [A]s part of the duty to exercise ordinary diligence in the purchasing process, a buyer of real property *is obliged to ask those in physical possession of property* (who are not also the current record titleholders) if they have some title to, or interest in, the occupied property that is adverse to the prospective buyer's title.

*Id.* at 198 (emphasis in original). The court held that the subsequent purchasers/mortgagees had a duty to ask those in possession whether they claimed any rights to the property, and, having not discharged that duty, were "charged with notice of facts they would have learned in the proper discharge of that duty." *Id.* at 203 (citing *Malamed*, 80 A.2d at 855).

In the present case, there was no evidence at trial that either Vandelay Holdings or their agents made any inquiry of the appellee concerning his interest in the property. Vandelay Holdings' amended complaint asserts that

Vandelay Holdings made numerous trips to the premises. (Am. compl. ¶6.) At a minimum, Melasecca testified at trial that he personally visited once. (Trial tr. vol. 1, 38:15-18.) At no point, however, did Vandelay Holdings contact Jackson before the sale was completed. Both Ms. Wilson and Ms. Moore testified to facts that support the conclusion that Jackson's possession was open and continuous during this time. Under these facts and the controlling case law, the instant trial court determined that Vandelay Holdings had a duty to inquire of Jackson who was in possession, and that in failing to do so, had constructive notice of Jackson's claim on the property.

## B. THE CLEAR AND CONVINCING STANDARD IS INAPPLICABLE TO A QUIET TITLE ACTION.

As noted above, an action to quiet title "places upon the plaintiff the burden of proving a prima facie title" by a "preponderance of the evidence." *Poffenberger*, 776 A.2d at 1041. Once met, the burden shifts to the opposing party to show superior title. *See id.* As previously stated, "open, notorious, and continued possession...is evidence of title...and is sufficient to put a subsequent purchaser or mortgagee on inquiry." *Kinch*, 166 A. at 906 (citations omitted).

Pennsylvania courts apply a clear and convincing evidentiary standard to claims of property rights acquired through possession. As such, Vandelay Holdings directs the instant court to case law regarding the standard for prescriptive easements and adverse possession, which is inapplicable to the action in this case. The present action involves a counterclaim brought by Jackson to quiet title,

in which he is asserting his proper title, not attempting to wrest title from Vandelay Holdings. "Pennsylvania recording laws...do not render invalid an unrecorded interest in land." *Ulrich*, 565 A.2d at 862 (Pa.Cmwlth 1989) (citations omitted).

Counsel presented demonstrative photographic evidence at trial showing clear signs of occupancy. (*See* Jackson's exs. 1-5.) Witnesses Moore and Wilson verified the accuracy of the demonstrative evidence and testified as to signs of occupancy they observed from their homes, which they testified were in clear view of Jackson's property. (Trial tr. vol. 1, 83:21-84:4, 103:14-16.) In accordance with case law and the evidence presented, the instant trial court determined that the proper standard by which to judge Jackson's possession was whether possession was open and continuous, that Jackson met these requirements, and that this put Vandelay Holdings on constructive notice.

## II. PERMITTING VERA MOORE AND ESTELLE WILSON TO TESTIFY AT TRIAL IS WITHIN THE DISCRETION OF THE COURT.

Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Competency is similarly set at a low bar: "Every person is competent to be a witness except as otherwise provided by statue or in these Rules." Pa.R.E. 601. Vandelay Holdings cites no statute or rule that disqualifies Moore or Wilson from testifying. In this case, Jackson's possession of the property

is at the crux of the dispute. Both witnesses testified to having resided in clear view of Jackson's property for over 65 years, and testified as to signs of occupancy that they routinely observed in 2009. Such evidence was clearly relevant to show possession of the property and thus relevant to Vandelay Holdings' duty to inquire about Jackson's interest. The appellant's objection to their testimony is thus unsubstantiated and unwarranted.

## CONCLUSION

Appellant had a duty to inspect the premises and to inquire of the person in possession about the state of the title to the property. Appellee was living in open and continuous possession of the property during all relevant periods, but was never approached by appellant or its agents. Appellant thus had constructive notice of appellee's interest in the property. Therefore, appellant was not a bona fide purchaser for value and was not entitled to the protection of the Recording Statute. As such, appellant was unable to show superior title to that of appellee, and the court found against appellant's action for ejectment and in favor of appellee's action to quiet title. Therefore, this court's denial of appellant's request for post-trial relief, affirming the findings of fact and conclusions of law issued on April 1, 2013, should be upheld.

## STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Appellant, Vandelay Holdings, LLC ("Vandelay"), by and through its counsel, files the following concise statement of errors complaint of on appeal in the above matter, and avers as follows:

1. Whether the trial court erred in finding that Vandelay was not a bona fide purchaser for value of the property located at 2028 North 15th Street, Philadelphia, PA 19121 (the "Property").

2. Whether the trial court erred in finding that Vandelay was not entitled to the protections of 21 Pa.C.S.A §351 (the "Recording Statute").

3. Whether the trial court erred in finding that actual possession of a property is construction notice that defeats a purchaser's bona fide purchaser for value status, even when there is no evidence that the purchaser had actual notice of the possession.

4. Whether the trial court erred in finding that Vandelay had an affirmative duty to inspect the Property to assure that it was unoccupied in addition to reviewing the chain of title to the Property.

5. Whether the trial court erred in failing to apply the clear and convincing standard to the issue of whether Vandelay had constructive notice of Jackson's actual possession of the Property.

5. Whether the trial court erred in finding against Vandelay and in favor of Dwight Jackson ("Jackson") on Jackson's claim to quiet title.

4. Whether the trial court erred in finding against Vandelay and in favor of Jackson on Vandelay's claim for ejectment?

5. Whether the trial court abused its discretion in permitting Vera Moore and Estelle Wilson to testify at trial.