IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tenzse Tamang and Dechen Tamang   :
  :   No. 1180 C.D. 2022
      v.   :
  :   Argued: December 6, 2023
Dauphin County Tax Claim   :
Bureau and Mohammad Nisar   :
  :
Appeal of: Mohammad Nisar   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE DUMAS                               FILED: July 31, 2024


      Mohammed Nisar (Appellant) appeals from an order of the Court of Common Pleas of Dauphin County (trial court), which granted a petition to open a claim absolute and set aside the upset tax sale of property (petition to set aside sale) owned by Tenzse Tamang and Dechen Tamang (Owners). The trial court's conclusion that the tax claim and tax sale were rendered void *ab initio* because Owners paid their 2019 property taxes is supported by substantial evidence and free from legal error. Therefore, after careful review, we affirm.

# I. BACKGROUND[1]

Owners owned property located at 1229 Wandering Way, Harrisburg, PA 17110 (Property). There was a mortgage on the Property, and Owners had an arrangement with their mortgagor, Northpointe Bank (Northpointe), for paying their property taxes. Owners would send their tax bill to Northpointe, which would then pay the taxes using funds from Owners' escrow account.

In December 2019, Owners informed Northpointe that they had received a tax bill for the 2019 property taxes.[2] Apparently, this initial contact did not result in Northpointe paying Owners' property taxes. A few weeks later, on December 27, 2019, Northpointe received a payment request from the tax collection agency, J.P. Harris Associates, LLP (J.P. Harris). On December 30, 2019, Northpointe issued two checks for the total amount due of $2,100.64 and sent the checks overnight via United Parcel Service (UPS) to J.P. Harris's office address.[3]

The checks were delivered to J.P. Harris's office address on December 30, 2019.[4] For whatever reason, J.P. Harris did not record the delivery and thus never cashed the checks. Therefore, according to the Dauphin County Tax Claim

---

[1] Unless stated otherwise, we adopt the factual background for this case from the trial court's opinion, which is supported by substantial evidence of record. *See* Trial Ct. Op., 10/14/22. Substantial evidence is evidence that a reasonable person would accept as adequate to establish the fact in question. *Hite v. City of McKeesport*, 312 A.3d 420, 424 n.8 (Pa. Cmwlth. 2024).

[2] Owners' primary language is Nepali. Tenzse Tamang testified that because of Owners' limited proficiency in English, they would forward their property tax bill to their realtor who would then contact Northpointe. *See* Notes of Testimony (N.T.), 9/13/22, at 7-8.

[3] One check was from Owners' escrow account for the principal amount of $1,871.48, and the other check was from Northpointe's funds for the penalty and interest owed of $229.16. N.T., 8/22/22, at 31.

[4] Northpointe representative Tina Chester testified that, according to Northpointe's records, UPS confirmed that the checks were delivered on December 30, 2019. N.T., 8/22/22, at 12-13. However, when Northpointe later tried to verify who had signed for the package, UPS records had been purged. *Id.* at 25-26. The trial court credited Ms. Chester's testimony. *See* Trial Ct. Op. at 2-3.

Bureau's (Bureau) records, Owners remained delinquent for their 2019 property taxes. Notwithstanding this purported delinquency, Owners received an Internal Revenue Service 1099 form from Northpointe that indicated on or around December 30, 2019, a disbursement of $1,871.48 was made from their escrow account.[5]

Thereafter, Owners promptly paid their 2020 and 2021 property taxes. Notably, Owners paid their 2021 property taxes while refinancing their mortgage. During this process, the refinance company contacted J.P. Harris to request tax information for the 2020-2021 tax year. At that time, J.P. Harris did not inform the refinance company or Owners that the 2019 property taxes were still considered delinquent.

About two months after Owners paid their 2021 property taxes, the Bureau sold the Property to Appellant at an upset tax sale. With no exceptions filed, the sale was confirmed, and the Bureau later recorded a tax claim deed that purportedly transferred ownership to Appellant.

The instant matter arose when Appellant filed an action in magisterial district court against Owners, seeking possession of the Property. In response, Owners filed their petition to set aside sale against the Bureau and Appellant, asserting that they had paid their 2019 property taxes and that the Bureau had not notified them of their purported delinquency or the pending sale. Accordingly, Owners requested that the trial court set aside the upset tax sale, nullify the deed issued to Appellant, and declare Owners to be the rightful owners of the Property.

---

[5] This 1099 form was referenced during the hearings and admitted into evidence as "petitioner's exhibit 4." *See* N.T., 8/22/22, at 5, 12, 56. However, we were unable to locate this exhibit in the trial court's record. Owners included this exhibit as part of their "Supplemental Reproduced Record" attached to their appellate brief. *See* Owners' Br. at S.R.R. 6-7.

3

The trial court held three hearings at which both sides presented evidence.[6] On October 14, 2022, the trial court granted Owners' petition to set aside sale. The trial court reasoned that although the tax collector never credited the payment, Owners had paid the 2019 property taxes, and, in the alternative, their Property was sold without proper notice. Trial Ct. Op., at 2-5. Appellant timely appealed to this Court.[7]

## II. ISSUES[8]

Appellant raises two issues on appeal. Appellant claims that the trial court erred in finding that payment was made and that Owners did not receive notice. Appellant's Br. at 3, 10-18.

---

[6] On June 17, 2022, a few weeks after the first evidentiary hearing, Northpointe refunded Owners a check for $1,871.48, the exact amount of the delinquent 2019 property taxes, because Northpointe realized that the payment was never processed. *See* N.T., 8/22/22, at 38-39, 41-42; Trial Ct. Op. at 3-4 n.4.

[7] The Bureau has not appealed but joined in Appellant's brief. *See* Joinder Br., 6/27/23.

[8] Owners assert that Appellant lacks standing and thus this appeal should be quashed. *See* Owners' Br. at 9. Our Supreme Court has instructed that quashal is generally limited to jurisdictional defects in an appeal. *See Sahutsky v. H.H. Knoebel Sons*, 782 A.2d 996, 1001 n.3 (Pa. 2001). In Pennsylvania, however, standing is not a jurisdictional matter. *See, e.g.*, *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 403 (Pa. 2021); *In re Nomination Pet. of DeYoung*, 903 A.2d 1164, 1168 (Pa. 2006). Therefore, we will construe Owners' argument as seeking dismissal. Owners properly preserved this issue by objecting to Appellant's participation in the trial court proceedings, N.T., 5/25/22, at 22-23; N.T., 8/22/22, at 18-19; N.T., 9/13/22, at 12, and as the prevailing party below, Owners were not required to file a protective cross-appeal. *See Lebanon Valley Farmers Bank v. Commonwealth*, 83 A.3d 107, 112 (Pa. 2013). However, Owners never filed an application to dismiss the appeal, and thus we lack a procedural vehicle to do so. *See, e.g.*, *C.M. v. Pa. State Police*, 269 A.3d 1280, 1282 n.3 (Pa. Cmwlth. 2022) (*en banc*). Regardless, Owners' argument lacks merit. Appellant was an indispensable party to Owners' petition to set aside the tax sale because Appellant was conveyed the deed from the Bureau. *See Fulton v. Bedford Cnty. Tax Claim Bureau*, 942 A.2d 240, 242-43 (Pa. Cmwlth. 2008). Therefore, Appellant has standing to appeal.

Appellant asserts that the trial court erred in concluding that Owners had paid their 2019 taxes. Appellant's Br. at 9-15. Appellant argues that the concept of "payment" encompasses both tender *and* receipt, and, thus, payment was not made because J.P. Harris never received the checks. *Id.* at 11-13.

Owners counter that the trial court's finding that they paid their 2019 taxes is supported by substantial evidence and evinces no clear error of law. *See* Owners' Br. at 5, 9-14. Specifically, according to Owners, the credited testimony of Northpointe representative Tina Chester that Northpointe mailed two checks for the total amount due and that UPS confirmed delivery on December 30, 2019, constitutes substantial evidence that supports the trial court's conclusion that Owners paid their taxes. *See id.* at 9-11.

"[I]t is a momentous event . . . when a government subjects a citizen's property to forfeiture for the non-payment of taxes." *Tracy v. Chester Cnty. Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985). The Real Estate Tax Sale Law (RETSL)[10] governs upset tax sales in second class A through eighth class counties.[11] *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1200 (Pa. 2020). The purpose of RETSL is to ensure the collection of taxes, not to deprive citizens of their property.

---

[9] In tax sale cases, our review is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence. *In re Balaji Invs., LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016). The trial court has the exclusive province to weigh evidence, make credibility determinations, and to draw all reasonable inferences from the evidence presented. *Smith v. Tax Claim Bureau of Pike Cnty.*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003). Where the trial court's findings are supported by substantial evidence of record, this Court may not disturb those findings on appeal. *Id.*

[10] Act of July 7, 1947, P.L 1368, *as amended*, 72 P.S. §§ 5860.101 – 5860.803.

[11] "An upset tax sale, generally, is the sale of property to recoup unpaid taxes at which all bids must equal or exceed a predetermined price sufficient to pay specified taxes, claims, and costs." *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1201 n.1 (Pa. 2020) (citing Section 605 of RETSL, 72 P.S. § 5860.605).

*Aldhelm, Inc. v. Schuylkill Cnty. Tax Claim Bureau*, 879 A.2d 400, 403 (Pa. Cmwlth. 2005). Further, RETSL was "not meant to punish taxpayers who omit, through oversight or error, to pay their taxes, but to protect local government against willful, persistent, long-standing delinquencies." *Huhn v. Chester Cnty.*, 328 A.2d 906, 908 (Pa. Cmwlth. 1974) (citing *In re Return of Sale of Tax Claim Bureau*, 76 A.2d 749 (Pa. 1950)).

Under RETSL, the upset tax sale of a delinquent property entails a multi-stage process. *See generally* Sections 101 to 609 of RETSL, 72 P.S. §§ 5860.101 – 5860.609. The tax claim bureau must give the taxpayer proper notice of a delinquent tax claim. *See* Sections 307 and 308 of RETSL, 72 P.S. §§ 5860.307-5860.308. Once a claim for delinquent taxes becomes absolute, the bureau must also give the taxpayer adequate notice of the impending tax sale. *See* Section 602 of RETSL, 72 P.S. § 5860.602. Any time prior to the sale, the taxpayer may discharge the claim by paying the full amount of taxes that have become absolute and interest due. Section 603 of RETSL, 72 P.S. § 5860.603.

After a delinquent property is sold at an upset tax sale, the sale is confirmed nisi within thirty days of the bureau's presentation of the consolidated return. Section 607(a) of RETSL, 72 P.S. § 5860.607(a). If no objections or exceptions to the tax sale are filed "within thirty (30) days after the court has made a confirmation nisi, a decree of absolute confirmation shall be entered as of course by the prothonotary." Section 607(c) of RETSL, 72 P.S. § 5860.607(c).

"Once a tax sale has been absolutely confirmed, no person may, by judicial proceedings, inquire into a bureau's proceedings with respect to the sale, except for the giving of notice under [RETSL]." *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 182 (Pa. Cmwlth. 1999) (citing Section 607(g) of RETSL,

6

72 P.S. § 5860.607(g)). Also, at that point, the taxpayer may seek relief by challenging the underlying tax *claim* (rather than the tax sale) "on the ground of payment of the tax involved or failure to receive notice." Section 314(e) of RETSL, 72 P.S. § 5860.314(e).

Because the bureau may only sell a property if the tax claim has become absolute, Section 601(a)(1)(i) of RETSL, 72 P.S. § 5860.601(a)(1)(i), if a taxpayer successfully establishes that they paid the tax involved or received inadequate notice of the tax claim, then the tax claim did not become absolute and thus the tax sale is void *ab initio*. *See In re Sale of Real Est. by Lackawanna Cnty. Tax Claim Bureau*, 255 A.3d 619, 631 (Pa. Cmwlth. 2021) (citing *Poffenberger v. Goldstein*, 776 A.2d 1037, 1042 (Pa. Cmwlth. 2001)) ("[W]here a property is improperly listed for upset tax sale, such as where all of the taxes had been paid, the upset sale of that property was void *ab initio* notwithstanding that the petition to set aside was filed outside the applicable statute of limitations period."). Therefore, complete payment of the tax involved at any time prior to the upset tax sale is grounds for setting aside an upset tax sale.

Payment is undefined in RETSL. However, our Supreme Court has recognized that payment is the "[p]erformance of an obligation by the delivery of money . . . accepted in partial or full discharge of the obligation." *Mission Funding Alpha v. Commonwealth*, 173 A.3d 748, 759 (Pa. 2017) (quoting *Payment*, Black's Law Dictionary (9th ed. 2009)). A check for the payment of property taxes is not considered paid at the time that the check is mailed. *See In re The Upset Sale of Props.*, 777 A.2d 532, 536-37 (Pa. Cmwlth. 2001) (holding that a property sale was valid where the taxpayer's mailed check was delivered after the tax sale). However, a mailed check is considered paid upon delivery, not at the time

that it is cashed or deposited. *See Romaine v. Workers' Comp. Appeal Bd. (Bryn Mawr Chateau Nursing Home)*, 901 A.2d 477, 483-86 (Pa. 2006) (citing *Douglass v. Grace Bldg. Co.*, 383 A.2d 937 (Pa. 1978)).[12]

Here, the trial court credited testimony from Tina Chester regarding the disbursement of funds from Owners' escrow account for payment of their 2019 property taxes. *See* Trial Ct. Op. at 2-3. Ms. Chester testified that on December 30, 2019, Northpointe mailed two checks for the total amount due of $2,100.64. N.T., 8/22/22, at 31-32. One check was from Owners' escrow account for the principal amount of $1,871.48, and the other check was from Northpointe's funds for the penalty and interest owed of $229.16. *Id.* at 31. Ms. Chester further testified that UPS had confirmed delivery of the checks. *Id.* at 12-13, 25-26. Based on this

---

[12] In *Douglass*, our Supreme Court "established the rule that payment occurs upon receipt of a check, with the condition that it be honored." *Romaine*, 901 A.2d at 482 (citing *Douglass*, 383 A.2d 937). In *Douglass*, the county treasurer received a mailed personal check from the property owners prior to the expiration of the redemption period. *Douglass*, 383 A.2d at 938-39. Although the statute did not specify the form of payment, the treasurer rejected the personal check and instructed the property owners to submit a different form of payment. *Id.* The *Douglass* Court held that the personal check constituted valid payment to satisfy redemption. *Id.* at 940-41. In doing so, the *Douglass* Court rejected the historical view that a personal check does not constitute payment because it amounts only to a "mere promise to pay." *Id.* at 940. This rationale was outdated since "[w]ith modern banking procedure, checks are a promise to pay for only a short period[.]" *Id.* Further, the *Douglass* Court recognized that the historical view was "too restrictive and would cause as many problems as it solves[,]" such as, "a situation where a taxpayer's check might not clear until after the redemption date through no fault of the taxpayer." *Id.* at 941.

Although arising in the context of workers' compensation benefits, in *Romaine* our Supreme Court recognized that *Douglass* was controlling for determining the date in which payment via a check is made. The *Romaine* Court explained that payment via a check is considered at the time the check is delivered. *Romaine*, 901 A.2d at 482-83. More specifically, at the time of delivery, a check is considered a conditional payment. *Id.* at 483. When the check is cashed, "what had been a conditional payment at the time of delivery of the check becomes an absolute payment. *Such payment then relates back to the date the check was delivered*." *Id.* (emphasis added).

testimony, the trial court found that Owners paid their 2019 property taxes.[13]  We defer to the trial court's credibility determinations.  *See Smith*, 834 A.2d at 1251. Further, this evidence constitutes substantial evidence to support the trial court's finding that Owners paid their 2019 property taxes.  *See Romaine*, 901 A.2d at 483-86.  Based on this record, the sale of the Property would offend the basic principles of RETSL.  *See Aldhelm*, 879 A.2d at 403; *Huhn*, 328 A.2d at 908.  Therefore, we discern no error in the trial court's decision to set aside the tax sale.  *See* Section 314(e) of RETSL, 72 P.S. § 5860.314(e).

Accordingly, we affirm the trial court's order granting Owners' petition to set aside sale of the Property.[14]

LORI A. DUMAS, Judge

---

[13] The trial court stated that "there was no evidence to dispute the testimony of the representative of Northpointe [Tina Chester] that *the payment was made* to J.P. Harris.  Moreover, we found [Tina Chester] credible in her testimony that two checks were sent" to J.P. Harris's office address.  Trial Ct. Op., at 2-3 (emphasis added).

[14] We recognize that the parties dispute whether the Bureau perfected notice.  *See* Owners' Br. at 17-28; Appellant's Br. at 15-18.  The trial court did not make clear findings of fact regarding the Bureau's compliance with the notice requirements.  *See* Trial Ct. Op. at 4-5.  Instead, the trial court found that the Bureau's notice was inadequate because Owners are Nepali speakers who speak little to no English.  *See id.* at 5.  Based on our disposition, we need not address the parties' arguments regarding notice.  We merely note that regardless of whether the Bureau perfected notice during this time, Owners were given other indications from Northpointe and J.P. Harris that the 2019 property taxes were paid.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tenzse Tamang and Dechen Tamang :
:  No. 1180 C.D. 2022
v. :
:
Dauphin County Tax Claim :
Bureau and Mohammad Nisar :
:
Appeal of: Mohammad Nisar :

# **O R D E R**

AND NOW, this 31st day of July, 2024, the October 14, 2022 order of the Dauphin County Court of Common Pleas, granting the Petition to Open Absolute Claim and setting aside the upset tax sale of property owned by Tenzse Tamang and Dechen Tamang, is AFFIRMED.

**LORI A. DUMAS, Judge**