# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Sale of Real Estate by : 
Lackawanna County Tax Claim Bureau : 
 : 
Judicial Tax Sale Property Situate at : 
911 Albright Avenue Scranton, PA :   No. 1346 C.D. 2019
18508 :   Argued:  February 9, 2021
 : 
Tax Map No. 14508-040-030 : 
 : 
Real Owner:  Gloria Brown : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
              HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE COHN JUBELIRER                FILED: May 10, 2021


Gloria Brown (Ms. Brown) appeals from the Order of the Court of Common Pleas of Lackawanna County (common pleas) that denied Ms. Brown's Motion for Post-Trial Relief (Post-Trial Motion).  Common pleas previously denied Ms. Brown's Petition to Set Aside Judicial Tax Sale (Petition to Set Aside) of her property located at 911 Albright Avenue, Scranton, PA, 18508 (Property), agreeing with the Lackawanna County Tax Claim Bureau (Bureau) and Kroperland, Inc. (Purchaser) that the Petition to Set Aside was barred by the six-month statute of limitations applicable to challenges to judicial sales pursuant to Section 5522(b)(5) of the Judicial Code, 42 Pa.C.S. § 5522(b)(5), and that the discovery rule did not toll the statute of limitations.[1]

---

[1] That section provides:  "[t]he following actions and proceedings must be commenced within six months:  . . . [a]n action or proceeding to set aside a judicial sale of property."  42 Pa.C.S. **(Footnote continued on next page…)**

On appeal, Ms. Brown argues that common pleas' Order should be reversed because the Bureau did not comply with the mandatory notice requirements of Section 607.1(a) of the Real Estate Tax Sale Law (Law),[2] which deprived Ms. Brown of due process and deprived common pleas of jurisdiction to approve the judicial sale resulting in the sale being void *ab initio*. Ms. Brown asserts that because jurisdictional challenges can be raised at any time, the statute of limitations does not bar the Petition to Set Aside. The Bureau and Purchaser do not argue that there was strict compliance with the Law's notice requirements but assert that any deviation therefrom is not jurisdictional in nature. Therefore, they maintain, Ms. Brown was required to establish that her Petition to Set Aside is not barred by the statute of limitations before she can raise her non-jurisdictional claims of lack of notice/service and, having not done so, common pleas' Order should be affirmed.

## I. BACKGROUND

### A. Facts

In February 2017, the Bureau filed a Petition to Sell Tax Delinquent Property at Judicial Sale Free and Clear of All Liens and Encumbrances (Petition to Sell) relating to the Property, of which Ms. Brown was record owner. (Reproduced Record (R.R.) at 12a.) The Petition to Sell recited that the Property had been

---

§ 5522(b)(5). This begins to run when the action accrues, which is "when the injured party possesses sufficient critical facts to put [the party] on notice that a wrong has been committed and that [the party] need[s to] investigate to determine whether [the party] is entitled to redress." *Weik v. Estate of Brown*, 794 A.2d 907, 909 (Pa. Super. 2002) (citation omitted). "The discovery rule is an exception to the statute which provides that 'the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that [the party] has been injured and that [the party's] injury has been caused by another party's conduct.'" *Constantino v. Carbon Cnty. Tax Claim Bureau*, 895 A.2d 72, 74-75 (Pa. Cmwlth. 2006) (quoting *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005)).

[2] Act of July 7, 1947, P.L. 1368, *as amended*, added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a).

exposed to an upset tax sale on September 26, 2016, for the nonpayment of taxes for the 2014 and 2015 tax years, (*id.* at 20a), the sale did not obtain a sufficient bid to pay the set upset price, and there had been no request for stay or removal of the Property from sale or discharge of the tax claim by Ms. Brown or any of her heirs, successors, or assigns, lien creditors or any of those heirs, successors, or assigns, or other interested person, (*id.* at 12a-13a). The Bureau stated that the judicial sale would occur on March 27, 2017, and asked common pleas to issue a Rule on all parties of interest to appear and show cause why the Property "should not be sold free and clear of their respective tax and municipal claims, liens, mortgages, charges, estates and encumbrances." (*Id.* at 14a.) Common pleas issued the requested Rule, setting the returnable date as March 16, 2017. (*Id.* at 11a.)

The Bureau attempted to serve the Rule and Petition to Sell personally on Ms. Brown at the Property, but the Sheriff's Return dated February 13, 2017, reflected that personal service was unsuccessful and included the notation "not found[,] vacant 2/13/2017." (*Id.* at 10a.) At the Bureau's request, common pleas issued an order approving alternative service for numerous properties set for judicial sale, including the Property, by both publication and United States First-Class Mail to the last known address of the property owner and indicating that such service would be sufficient. (Original Record (O.R.) at Item 3.) Thus, the Bureau published notice of the judicial sale and attempted to serve Ms. Brown by mailing the materials to the Property, which was her last known address despite knowing, based upon the Sheriff's Return, that the Property was vacant. The Bureau filed an affidavit by its counsel on March 13, 2017, stating that it had mailed the Rule and Petition to Sell to Ms. Brown on March 10, 2017. (*Id.* at Item 4.) Satisfied that the Law's requirements were met, common pleas approved the judicial sale of the Property by

3

order dated March 20, 2017. (*Id.* at Item 5.) The Property was sold at the judicial sale on March 27, 2017, to Purchaser for $8,000. (R.R. at 43a.) However, as reflected in the Bureau's records, the mailed notice was subsequently returned as "Unable to Forward." (*Id.* at 42a.) A deed from Bureau to Purchaser dated June 6, 2017, was recorded on June 30, 2017. (*Id.* at 44a-47a.)

### B. Petition to Set Aside

On April 4, 2018, Ms. Brown filed the Petition to Set Aside, asserting she had "not receive[d] actual notice of the [j]udicial [s]ale," had "first bec[o]me aware of the [j]udicial [s]ale in late October or early November[] 2017[,] and [had] retained counsel to determine how the [P]roperty was sold without providing any notice to her." (*Id.* at 35a-36a.) Ms. Brown asserted she would repay Purchaser what had been "reasonably expended in connection with the purchase of the Property," her sole asset, the value of which Ms. Brown believed to be more than $70,000 based upon "the Realty Transfer Tax Statement of Value filed in connection with the June 6, 2017 Deed. . . ." (*Id.* at 36a-37a.) She averred that given that value, the sale of the Property for $8,000 was grossly inadequate and was a basis to overturn the sale. (*Id.* at 37a.)

The Bureau filed an Answer to the Petition to Set Aside, denying the material allegations. (*Id.* at 52a-53a.) The Bureau also argued that the Petition to Set Aside was barred by the relevant limitations period of six months, which, based on the discovery rule, began to run on the date the deed was recorded on June 30, 2017, citing *In re Sale of Real Estate by Lackawanna Tax Claim Bureau* (Pa. Cmwlth., No. 2027 C.D. 2013, filed August 1, 2014), slip op. at 14 n.9 (*HSBC Bank*), and *Deutsche Bank National Trust Co. v. Bendex Properties LLC*, No. 3:16-CV-00432, 2018 WL 1532796, *2 (M.D. Pa. March 29, 2018). (R.R. at 53a-55a.) On April 5, 2018,

4

common pleas issued a Rule to Show Cause on the Bureau as to why the Petition to Set Aside should not be granted, returnable on April 25, 2018, and scheduled a hearing for May 22, 2018. (*Id.* at 34a.)

### C. Proceedings Before Common Pleas

Ms. Brown did not appear at the May 22, 2018 hearing but was represented by counsel. The Bureau was represented by counsel, and a Bureau claims processor, Barbara Lynady (Claims Processor), testified.[3] The Bureau argued that the Petition to Set Aside should be dismissed for being filed outside the statute of limitations period without consideration of the substantive arguments on the alleged lack of notice. (*Id.* at 79a, 99a.) Ms. Brown asserted that "absent proper notice to [the taxpayer], [common pleas] lack[ed] jurisdiction to even order a sale" and that, here, "the notice was so defective . . . that [common pleas] had no ability to order a sale . . . [of the] [P]roperty." (*Id.* at 80a.) In this circumstance, Ms. Brown argued, "[t]he statute [of limitations] would[ not] have come into play because the sale could[ not] have taken place or should not have been able to take place" because one "can[not] rely on a defective service to create a statute of limitations" issue. (*Id.* at 80a-81a.) The Bureau responded that, "if [this] was the case[,] the statute of limitations would[ not] ever apply in tax sale cases" because "the argument always is a lack of notice." (*Id.*) Ms. Brown argued that accepting this argument "would give the tax claim bureau free reign to ignore the statute completely," resulting in "people los[ing] their property without appropriate notice," which should not be allowed under the strict construction of the notice requirements in taxing statutes. (*Id.* at 81a-82a.)

---

[3] Purchaser also briefly testified that the Property had been condemned and that, in addition to the $8,000 purchase price, he had invested $10,000 into the Property. (R.R. at 100a-01a.)

5

The Bureau called Claims Processor to establish the filing and service of the Petition to Sell. (*Id.* at 82a.) Claims Processor testified that her duties included collecting delinquent taxes and preparing properties for tax sale and that she was familiar with the Bureau's record keeping system. (*Id.* at 83a.) She agreed that the Bureau had a regular practice of keeping records showing compliance with the Law's notice requirements and had reviewed the file related to the sale of the Property. (*Id.*) According to Claim Processor's review of the file, the Bureau attempted to serve the Petition to Sell and Rule on Ms. Brown by both Sheriff and by First-Class Mail, after receiving permission to use alternative service, and these attempts were unsuccessful. (*Id.* at 84a-86a.) In addition, she testified, the judicial sale was published in both a paper of general circulation and a legal journal in Lackawanna County. (*Id.* at 86a-87a.) On cross-examination, Claims Processor agreed she was aware that the First-Class Mail was returned. When asked what the Bureau then did to try to find Ms. Brown, Claims Processor testified that "[u]sually . . . [they] try to look through the white pages or if there[ is] a different address and it[ is] return[ed] to sender we do[ not] know if the [person is] not there, why it was returned. It was[ not] refused, so we would look to see" "if she lived at another location." (*Id.* at 92a.) However, Claims Processor could not answer whether this process "was done in this particular case" because this was not her property and each Bureau claims processor had his or her "own properties, and everyone does check to make sure everything is done for each property." (*Id.*) She acknowledged there were no notations on the Property's file describing what efforts were performed to find Ms. Brown once service by mail and Sheriff were unsuccessful because they "do[ not] usually put [notations] in the file," she had "never made notations on [her] propert[ies]," and she thought this would be no different for this Property. (*Id.* at

6

92a-93a.) Therefore, Claims Processor agreed that she could not say "with any certainty what specific actions were taken and by whom and on what date to find Ms. Brown." (*Id.* at 93a.)

On December 18, 2018, common pleas issued an order denying the Petition to Set Aside and sustaining the March 27, 2017 judicial sale of the Property. (*Id.* at 58a.) Ms. Brown filed the Post-Trial Motion on December 28, 2018, challenging common pleas' finding in favor of the Bureau and Purchaser. Ms. Brown reiterated her claims set forth in the Petition to Set Aside and asserted that it was clear from the May 22, 2018 hearing that the Bureau had not established that it had complied with the Law's requirement that additional or special efforts be taken to find her. (*Id.* at 60a-61a.) Because the Bureau had not met its burden of proving it complied with the Law's requirements, Ms. Brown asserted that she was entitled to judgment in her favor. (*Id.* at 63a.)

Following argument, common pleas issued a Memorandum & Order denying the Post-Trial Motion on August 21, 2019.[4] Citing the Bureau's argument that the Petition to Set Aside was time-barred, common pleas reasoned as follows:

> [Ms.] Brown acknowledged at the time of the hearing that she became aware that the [P]roperty had been sold at tax sale in "late October or early November[] 2017". Thus, [Ms.] Brown avers the discovery rule tolled the statute of limitations. The relevant factual inquiry into the applicability of the discovery rule is the determination [of] whether, during the limitations period, the [p]etitioner was able through the exercise of reasonable diligence to know that she had been injured and by what cause. *See Gleason v. Borough of Moosic*, 15 A.3d 479 (Pa. 2011).

---

[4] An earlier argument was held before the common pleas judge who issued the December 18, 2018 Order, but that judge determined that he should not hear the Post-Trial Motion due to a conflict. Therefore, a second argument was heard by a different common pleas judge, who issued the decision on the Post-Trial Motion.

Our review of the record demonstrates a lack of reasonable diligence, or any diligence, on [Ms. Brown's] part. Even assuming the recording of the tax sale deed on June 30, 2017[,] did not serve as constructive notice, [Ms.] Brown, based on her admitted discovery in late October or early November of 2017, filed her Petition outside the permitted six[-]month period.

(Common Pleas Memorandum & Order, Aug. 21, 2019, at 2.) Ms. Brown now appeals to this Court.[5]

## II. THE PARTIES' ARGUMENTS

Ms. Brown argues common pleas erred in relying on the statute of limitations to deny the Petition to Set Aside because her challenge to the judicial sale is jurisdictional and, therefore, can be raised at any time. *McCutcheon v. Phila. Elec. Co.*, 788 A.2d 345, 349 (Pa. 2002). She asserts the notice requirements of the Law, which are detailed and extensive, are mandatory and must be strictly construed. *In re Sale of Real Estate by Lackawanna Cnty. Tax Claim Bureau*, 22 A.3d 308, 315 (Pa. Cmwlth. 2011) (*Rinaldi*). Ms. Brown argues that, pursuant to Section 607.1(a) of the Law, the Bureau must take reasonable steps to provide notice to delinquent taxpayers before selling their property. *Jones v. Flowers*, 547 U.S. 220, 226, 234 (2006). The Bureau's noncompliance with Section 607.1(a)'s requirements, which define the minimum reasonable efforts a tax claim bureau should take, she argues, results in the taking of her Property without due process. And, it is clear from this record, Ms. Brown asserts, that the Bureau did not meet its burden of proving its

---

[5] "Our scope of review in tax sale cases is limited to determining whether [common pleas] abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 181 n.6 (Pa. Cmwlth. 1999). "[A] challenge to jurisdiction raises a question of law. . . . Thus, our standard of review is de novo, and our scope of review is plenary." *Waggle v. Woodland Hills Assoc., Inc.*, 213 A.3d 397, 402 n.5 (Pa. Cmwlth. 2019).

compliance with Section 607.1(a).[6]  *See McElvenny v. Bucks Cnty. Tax Claim Bureau*, 804 A.2d 719, 721 (Pa. Cmwlth. 2002).

Ms. Brown next argues that "personal jurisdiction is not perfected unless and until [the notice and service requirements of the Law] [are] complied with," even if compliance with those requirements "would have been futile." (Ms. Brown's Brief (Br.) at 15-16.) *See Rinaldi*, 22 A.3d at 313; *City of Philadelphia v. Manu*, 76 A.3d 601, 605-06 (Pa. Cmwlth. 2013). She asserts that, due to the lack of compliance with the notice and service provisions of the Law, common pleas lacked jurisdiction and was "powerless to enter judgment against that party." (Ms. Brown's Br. at 17 (quoting *City of Philadelphia v. Berman*, 863 A.2d 156, 160 (Pa. Cmwlth. 2004)).) Ms. Brown contends that, while these requirements may be viewed, on their face, as procedural because they are the means through which common pleas obtains its authority to order a judicial sale, in which case a voidable judgment would result, they are really jurisdictional such that noncompliance results in a void judgment. *M&P Mgmt., L.P. v. Williams*, 937 A.2d 398, 400-02 (Pa. 2007). For this reason, Ms. Brown argues that common pleas' order approving the judicial sale of the Property was void *ab initio* and should have been struck once brought to common pleas' attention because a void judgment "cannot become valid through the lapse of time." (Ms. Brown's Br. at 19 (quoting *M&P Mgmt.*, 937 A.2d at 401).)

The Bureau responds that common pleas properly denied the Petition to Set Aside because Ms. Brown's challenges, including those relating to the failure to

---

[6] Ms. Brown also cites Sections 602 and 607 of the Law in her brief, suggesting that these are the relevant notification requirements for the tax sale here. However, those requirements are for upset tax sales, which are more onerous than the notice requirements for judicial sales, which are found at Sections 611 and 612 of the Law. 72 P.S. §§ 5860.602, .607, .611, .612; *In re Serfass*, 651 A.2d 677, 679-680 (Pa. Cmwlth. 1994) (explaining that the notice requirements for judicial sales are less onerous than those for upset tax sales). Ms. Brown also notes that she did not receive notice of the upset sale.

comply with the Law's notice requirement, were barred by the six-month statute of limitations applicable to judicial sales. The Bureau argues that the six-month statute of limitations began to run at the recording of the deed, which provided constructive notice of the judicial sale of the Property. *HSBC Bank*, slip op. at 14 n.9; *Deutsche Bank*, 2018 WL 1532796, at *7. The expiration of the statute of limitations period, the Bureau argues, "bars [Ms. Brown] from challenging any potential defects in the Tax Sale." (Bureau's Br. at 5 (quoting *Pfeifer v. Westmoreland Cnty. Tax Claim Bureau*, 127 A.3d 848, 852 (Pa. Cmwlth. 2015) (emphasis omitted)); *Constantino v. Carbon Cnty. Tax Claim Bureau*, 895 A.2d 72, 76 (Pa. Cmwlth. 2006). The Bureau was silent regarding its compliance with the Law's notice requirements and did not directly address Ms. Brown's jurisdictional arguments in its brief. However, at oral argument, the Bureau asserted that accepting Ms. Brown's jurisdictional arguments would effectively eliminate the statute of limitations, which serves to provide finality to tax sales and as a bar to prevent the litigation of stale claims.

Purchaser agrees with the Bureau that the Petition to Set Aside is barred by the six-month statute of limitations, which began to run on the recording of the deed. The recording of the deed, Purchaser asserts, constitutes constructive notice on landowners because the Pennsylvania recording statute,[7] 21 P.S. § 351, has been

---

[7] Section 1 of the Act of May 12, 1925, P.L. 613, *as amended*, 21 P.S. § 351. This provision states:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged

**(Footnote continued on next page…)**

10

interpreted as giving notice to the public of the title transfer and contents of the deed. *Weik v. Estate of Brown*, 794 A.2d 907, 911 (Pa. Super. 2002). Further, Purchaser points out two cases where this Court did not address claims of insufficient notice and procedural irregularities of a tax sale, similar to those made by Ms. Brown, due to the expiration of the statute of limitations. *Pfeifer*, 127 A.3d at 854; *Poffenberger v. Goldstein*, 776 A.2d 1037, 1041-42 (Pa. Cmwlth. 2001). Purchaser asserts that Ms. Brown admitted, through the Petition to Set Aside, that she knew about the sale within the six-month limitations period and retained counsel. But, Purchaser argues, because Ms. Brown did not testify at the hearing, there was no sworn testimony regarding whether she received the bills and notices regarding the past due taxes, how and when she became aware of the tax sales, when she retained counsel, and why she waited until after the expiration of the limitations period to file the Petition to Set Aside. Purchaser warns that, "[u]nder these circumstances, without any sworn testimony, an aggrieved owner (like [Ms. Brown] here) can make[ ]up any set of facts to support a petition at any time after a [j]udicial . . . [s]ale," which would render Section 5522(b)(5)'s specific limitations period for challenges to judicial sales "futile and greatly prejudice[s] purchasers like [Purchaser] here." (Purchaser's Br. at 7-8.)

---

fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

21 P.S. § 351.

## III. DISCUSSION

The parties offer compelling arguments in support of their respective positions that due process requires more than was done here and that there be finality to tax sales. In considering those arguments, however, we must be cognizant that the purpose of the Law is to ensure the collection of taxes, not to deprive citizens of their property. *Rinaldi*, 22 A.3d at 315. These provisions "were never meant to punish taxpayers who omitted through oversight or error . . . to pay their taxes." *In re Return of Sale of Tax Claim Bureau*, 76 A.2d 749, 753 (Pa. 1950). Our Supreme Court has stated that, over time, "taxing authorities have lost sight of the fact that it is a **momentous** event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes." *Tracy v. Cnty. of Chester, Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985) (emphasis added). "It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law," which requires notice and an opportunity to be heard. *Hess v. Westerwick*, 76 A.2d 745, 748 (Pa. 1950). Such notice must be reasonable under the circumstances. *Id.*

The General Assembly has established, via the Law, what notice is reasonably required prior to selling a property at tax sale. These notice requirements are mandatory and must be strictly construed. *Mfrs. & Traders Tr. Co. v. Luzerne Cnty. Tax Claim Bureau*, 56 A.3d 36, 39 (Pa. Cmwlth. 2012). One of these mandatory requirements is a tax claim bureau's obligation to make reasonable efforts to find an owner pursuant to Section 607.1 when mailed notice is returned or when there is doubt that the owner received such notice. Specifically, Section 607.1 of the Law provides:

12

(a) **When any notification of a pending tax sale** or a tax sale subject to court confirmation **is required to be mailed** to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, **and** such mailed notification **is** either **returned** without the required receipted personal signature of the addressee **or** under other circumstances raising a significant **doubt as to the actual receipt** of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, **the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.** The bureau's efforts **shall include**, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful**, a notation shall be placed** in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

(b) The notification efforts required by subsection (a) shall be in addition to any other notice requirements imposed by this act.

72 P.S. § 5860.607a (emphasis added). This provision applies to judicial sales. *In re Sale No. 10*, 801 A.2d 1280, 1288 (Pa. Cmwlth. 2002). Not strictly applying the notice provision could result in an owner being deprived of her property without due process. *In re Upset Tax Sale of Sept. 29, 2014*, 163 A.3d 1072, 1074 (Pa. Cmwlth. 2017). "Service of the rule to show cause is the final required notice to be served on [a] landowner prior to the [j]udicial [s]ale," and there is no requirement under the Law that landowners receive actual notice of the date of a judicial sale. *In re Sale of Real Estate Northampton Cnty. Tax Claim Bureau*, 874 A.2d 697, 698, 701 (Pa. Cmwlth. 2005).

13

*A. Whether Noncompliance with the Law's Notice Requirements Would be a Jurisdictional Defect that Renders the Judicial Sale of the Property Void Ab Initio?*

It is beyond purview that a court that lacks personal jurisdiction is powerless to enter judgment against the defendant. *Berman*, 863 A.2d at 160. As we explained in *Fraisar v. Gillis*, 892 A.2d 74, 77 (Pa. Cmwlth. 2006), "[b]**efore a court may determine a legal action**, it must possess both subject[] matter jurisdiction and jurisdiction o[ver] the person." (Emphasis added.) Where the court lacks jurisdiction, any judgment entered thereby is void and can be challenged at any time.[8] *M&P Mgmt.*, 937 A.2d at 401.

Although *Berman* and *Fraisar* did not involve tax sales, their fundamental principles have been applied in tax sale cases, including those Ms. Brown argues support her argument that compliance with the notice requirements implicates a court of common pleas' jurisdiction and, therefore, its authority to order a judicial tax sale in the first instance. In contrast, the Bureau and Purchaser argue that caselaw supports their arguments that challenges to defects in notice may be addressed only through a timely-filed petition to set aside. Upon review, we determine that Ms. Brown's position is supported by that caselaw, while the cases cited by the Bureau and Purchaser are distinguishable.

In *Rinaldi*, the Court reviewed the denial of a petition to set aside a judicial tax sale based on the Bureau's noncompliance with Section 611 of the Law's requirement that a sheriff serve the rule to show cause when it had a state constable serve the documents on the son/stepson of the property owner. Although the court of common pleas discounted the noncompliance because the service was consistent with a county resolution that allowed for service by constable and because the

---

[8] In contrast, a procedural defect results in voidable judgment that must be challenged within a certain period of time. *M&P Mgmt.*, 937 A.2d at 401.

14

taxpayer had constructive notice of the matter, we reversed. This Court explained that "[t]he **primary purpose of service** is to give **adequate notice** of the pendency of an action," and that "[p]roper service is a **prerequisite to a court acquiring personal jurisdiction over a defendant.**" *Rinaldi*, 22 A.3d at 313 (emphasis added) (citing *Fraisar*, 892 A.2d at 77). The Court distinguished Section 601(a)(3) of the Law, 72 P.S. § 5860.601(a)(3), which pertains to the service requirements for **upset** tax sales and allows for personal service by someone other than a sheriff, from Section 611 of the Law, which applies to **judicial** tax sales and requires personal service of the rule by sheriff. Strictly construing Section 611's requirement that the rule to show cause be served by a sheriff, the Court held that **service was invalid**, and **the judicial sale had to be set aside**.

Subsequently, in *Manu*, we reiterated our statement in *Rinaldi* that proper service is needed for a court to have personal jurisdiction over a defendant and further explained that "[f]ailure to strictly comply with the service requirement[s] **deprives the court of jurisdiction** to authorize a sheriff's sale." 76 A.3d at 605-06 (emphasis added) (citing *Fraisar*, 892 A.2d at 77). *Manu* involved a challenge to a sheriff's sale of property under what is commonly known as the Municipal Claims and Tax Liens Act (MCTLA)[9] due to noncompliance with that act's notice provisions, which, like a judicial sale, require court approval of the requested sale and is free and clear. With regard to service, the City of Philadelphia presented an affidavit claiming to show that service occurred prior to the sale, but the affidavit had been signed after the court of common pleas had approved the tax sale. *Id.* at 605. Explaining that, prior to "granting a petition for sale, the court must make 'an independent inquiry' regarding the [C]ity's strict compliance with the service

---

[9] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7455.

15

requirement," we held that "[o]bviously," the affidavit of service "could not have been before the court [of common pleas] by any means . . . when the order for sale of the property was entered," and the finding of proper service made by the court of common pleas was not supported by the record. *Id.* at 605-06. We held that "[s]trict compliance with the service requirement **protects the procedural due process rights of all interested parties** to notice and an opportunity to be heard **and guards against deprivation of property without substantive due process of law**." *Id.* at 606 (emphasis added). Due to the numerous violations of the MCTLA, which implicated the due process rights of interested parties, we vacated the order authorizing the sale of the property. *Id.* at 607.

In *Serrino v. County of Luzerne Tax Claim Bureau* (Pa. Cmwlth., No. 2014 C.D. 2012, filed August 1, 2013), slip op. at 11-12 (quoting *Berman*, 863 A.2d at 160) (emphasis added),[10] we stated, based on the requirements of service of original process under Pennsylvania Rules of Civil Procedure 402(a) and 405(b), Pa.R.C.P. Nos. 402(a), 405(b), that "[s]ervice of process is the mechanism by which **a court obtains jurisdiction over a defendant**" and "[i]n the absence of valid service, a **court lacks personal jurisdiction over the party and is powerless to enter judgment** against that party." In *Serrino*, the sheriff's return reflected that the petition to sell and rule to show cause were handed to a person at the property owner's business address, but there was no indication on the sheriff's return of that person's relationship with the property owner and, therefore, why service on that individual was valid. Due to the return of service in *Serrino* being "facially

---

[10] Although unreported panel decisions of this Court are not binding, they may be cited as persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

defective," it was insufficient to establish that service was proper when the court of common pleas issued the order directing that the property could be sold at judicial sale. *Id.* at 12. Because the property owner "did not receive proper legal notice[] in accordance with the Law," we affirmed the order setting aside the judicial sale "and declar[ed] the . . . judicial sale of the [p]roperty **null and void**. . . ." *Id.* at 12, 14 (emphasis added).

These cases support Ms. Brown's argument that defects in notice or compliance with the Law's notice requirements not only deprived her of due process but also deprived the court of common pleas of jurisdiction and the authority to order the judicial sale of the Property, which can be raised at any time. We recognize that *Rinaldi*, *Manu*, and *Serrino* all involved timely filed challenges; however, we must give effect to the Court's repeated and consistent application of the principle that the notice requirements are **jurisdictional**. Doing so, such sales were void *ab initio*. *Accord Pa. Game Comm'n v. Thomas E. Proctor Heirs Tr.*, Civil No. 1:12-CV-01567, 2019 WL 6954101 (M.D. Pa. Feb. 21, 2019) (holding that a defendant to a 2012 quiet title action could challenge a 1908 treasurer's sale for nonpayment of taxes based on lack of proper notice because the lack of notice was a jurisdictional defect that could be raised at any time), *exceptions denied*, *Pa. Game Comm'n v. Thomas E. Proctor Heirs Tr.*, 455 F. Supp. 3d 127, 152 (M.D. Pa. 2020).

The cases cited by the Bureau and Purchaser do not compel a different result. In *Poffenberger*, the plaintiffs filed a quiet title action relating to 23 acres in 1997 against the purchaser of property at a 1985 upset tax sale, who in turn argued that the plaintiffs' record title only gave them ownership of 13 acres and that the action was barred by the statute of limitations for tax sales. There had been a prior tax sale of the 23 acres in 1964, and there was no information on whether the Law's

17

requirements were followed for that sale. The trial court held that the statute of limitations did not bar the quiet title action and that because there was no evidence that the Law's notice requirements were followed, that sale was invalid. On appeal, we reversed, without analysis, "conclud[ing] that the procedural regularity of th[e] tax sale [was] beyond challenge" because the statute of limitations had passed for both the 1985 and 1964 tax sales. *Poffenberger*, 776 A.2d at 1041-42. However, we recognized at least one exception, where a property is improperly listed for upset tax sale, such as where all of the taxes had been paid, the upset sale of that property was void *ab initio* notwithstanding that the petition to set aside was filed outside the applicable statute of limitations period. *Id.* at 1042.

In *Pfeifer*, individuals who asserted they owned certain oil and gas rights filed an action in 2013 challenging the sale of those rights in a 1990 upset tax sale without the tax claim bureau having provided them proper notice under the Law, which the tax claim bureau argued was barred by the statute of limitations. The court of common pleas granted summary judgment and dismissed the action, concluding that the individuals had received constructive notice of the sale and any delay was due to their own failure to exercise due diligence. Noting that "a discussion of the statute of limitations . . . must be examined in conjunction with a discussion of notice," we explained, citing *Poffenberger*, that the Court had held that a cause of action to set aside a tax sale on the basis of deficient notice accrued and the statute of limitations began to run on the date of the tax sale." 127 A.3d at 851. We agreed with the court of common pleas that the tax sale had occurred more than 23 years before the filing of the action to set aside the sale and that "[r]ecording the deed of the [t]ax [s]ale by [the purchaser] put the public on notice of the sale," and, therefore, "[t]he passage of time and/or [] constructive notice bar[red] them from challenging any potential

18

defects in the [t]ax [s]ale." *Id.* at 851-52. Finally, after reviewing Section 5527(b) of the Judicial Code, which provides for a six-year statute of limitations period for challenging an upset tax sale, 42 Pa.C.S. § 5527(b), we concluded "that an action to challenge a tax sale must be initiated within [that period], regardless of a lack of notice." *Pfeifer*, 127 A.3d at 854.

However, neither *Poffenberger* nor *Pfeifer* involved, as here, an argument that this defect was jurisdictional and, therefore, could be raised at any time. More importantly, neither case involved a **judicial sale**, meaning that there was **no need for a valid court order to approve** the tax sale prior to it occurring. Further, *Poffenberger* recognized that the statute of limitations does not bar a claim where a tax sale is found to be void *ab initio*. Thus, these cases are distinguishable and do not require that the judicial sale here be upheld.

Ultimately, given the fundamental rights at issue when the government sells private property for nonpayment of taxes and the critical role compliance with the Law's reasonable notice requirements plays in protecting those fundamental rights, Ms. Brown's arguments that noncompliance with the Law's requirements is a jurisdictional defect that can void a judicial sale are persuasive and supported by our caselaw. As we held in *Manu*, "[f]ailure to strictly comply with the service requirement[s] deprives the court of jurisdiction to authorize a sheriff's sale." 76 A.3d at 605-06. This is because "[s]trict compliance with the service requirement **protects the procedural due process rights of all interested parties** to notice and an opportunity to be heard **and guards against deprivation of property without substantive due process of law**." *Id.* at 606 (emphasis added); *see also Fraisar*, 892 A.2d at 77 ("The rules governing service . . . [are] to ensure notice . . . ."). In cases where, as here, the sale of property is directed by the court of common pleas,

19

it is important for that court to "make 'an independent inquiry' regarding . . . strict compliance with the service requirement[s]," *Manu*, 76 A.3d at 605, in order to confirm that it has jurisdiction. Strict compliance with the notice requirements, as a matter of due process, is of particular importance in judicial sale cases because such sales extinguish the interests, not only of the property owner, but also, among others, of mortgagees and lienholders. Further, the confirmation of proper service and notice is crucial in judicial sales because the statute of limitations to challenge such sales is a mere **six months**, as opposed to the **six-year** limitations period available to challenge upset tax sales. Absent jurisdiction, common pleas lacked the authority to approve the judicial sale of the Property in the first instance.

Although the Bureau and Purchaser raise understandable concerns regarding the need for finality in tax sales and to prevent stale claims, this is not a situation where the judicial sale being challenged occurred in the distant past.[11] Ms. Brown's claims that the Bureau did not strictly comply with the Law's requirements cannot reasonably be characterized as "stale" notwithstanding that they were filed more than six months after the judicial sale of the Property and Purchaser's recording of the deed. Here, by the time the mailed notice was returned by the postal service to the Bureau as undeliverable, the sale had already occurred. Moreover, to the extent that the Bureau's and Purchaser's finality arguments raise concerns regarding **upset** tax sale cases, such arguments are not persuasive. While noncompliance with the Law's notice requirements is often an issue in upset tax sale cases, those types of sales do not require a court order to proceed and, thus, do not implicate the jurisdictional question before the Court in this matter.

---

[11] We offer no opinion as to what defenses may be available to a tax claim bureau or a purchaser under circumstances other than those presented here.

For these reasons, in order to establish common pleas' jurisdiction, and, therefore, authority to approve the judicial sale of the Property, the Bureau had to demonstrate its compliance with the Law.

*B. Did the Bureau Establish its Compliance with the Law's Notice Requirements so as to Provide Common Pleas with Jurisdiction to Approve the Judicial Sale of the Property?*

For judicial tax sales, the rule to show cause must be served by the sheriff, who must "attach his return, the return receipts, and if the person named in the rule . . . cannot be found at his last known address" evidence thereof. 72 P.S. § 5860.611. In addition, Section 607.1 of the Law addresses what steps a tax claim bureau is to take to find an owner when mailed notice is returned or when there is doubt that the owner received such notice. 72 P.S. § 5860.607a. Further, under that section, the tax sale is to be delayed while the tax claim bureau engages in those reasonable efforts and is to be rescheduled when those requirements have been met. *Id.* Section 612(a) of the Law requires that, prior to ordering the judicial sale of a property, the court must be "satisfied that service of the rule has been made upon the parties named in the rule, **in the manner provided by the [Law]**." 72 P.S. § 5860.612(a) (emphasis added). The tax claim bureau bears the burden of proving that it complied with the statutory notice requirements. *In re: Sale of Real Estate by Lackawanna Tax Claim Bureau (Appeal of Yankowski)*, 986 A.2d 213, 216 (Pa. Cmwlth. 2009).

In the case *sub judice*, because the sheriff's deputy was unable to personally serve the Rule and Petition to Sell at the Property, the Bureau received permission from common pleas to provide alternative service of the pending tax sale by publication and **by mail**. As service was now to be by mail, the requirements of Section 607.1(a) were triggered. Here, the Bureau presented Claim Processor's testimony and evidence from the Property's file to describe the Bureau's efforts to

21

serve the Rule and Petition to Sell on Ms. Brown. It is apparent from the record, however, that the Bureau did not comply with the notice provisions of the Law.

First, Section 607.1(a)'s language reflects that there must be sufficient time between the mailing of the notice and the tax sale itself to allow for the attempted delivery of the mailed notice and its return to the tax claim bureau so that the tax sale could be delayed to allow the tax claim bureau time to perform reasonable efforts to find the owner as statutorily required. Here, after receiving permission to serve the Rule and Petition to Sell to Ms. Brown by First-Class Mail, the Bureau claimed to have mailed same on March 10, 2017,[12] but did not wait to see if that mail would be returned. Rather, on March 13, 2017, the Bureau filed an affidavit with common pleas stating that it had mailed the documents to Ms. Brown. Common pleas, which had approved the alternative service by mail, did not wait to see if service of the Rule and Petition to Sell by mail satisfied the requirements of Section 607.1(a), but approved the judicial sale of the Property seven days later, on March 20, 2017, notwithstanding that Ms. Brown did not appear at the March 16, 2017 hearing on the Rule. The Property was sold a week later, on March 27, 2017, after which the Bureau received the returned notice, which was marked "return to sender" on March 27, 2017. Had it been returned to the Bureau earlier, the Bureau's statutory obligation to perform additional inquiries into Ms. Brown's whereabouts would have been triggered. Thus, Ms. Brown's rights to the Property were terminated in a mere 17 days (and perhaps less) without her ever receiving notice of the judicial sale. The haste at which these actions were taken is not consistent with the notice requirements of the Law, particularly where the forfeiture of a citizen's property for the non-

---

[12] We note that the envelope bearing Ms. Brown's name and the Property's address in the record bears a postmark of March **13**, 2017, not March **10**, 2017. (R.R. at 42a.)

22

payment of taxes is a "momentous event under the United States and Pennsylvania Constitutions." *Tracy*, 489 A.2d at 1339.

Second, Section 607.1(a)'s reasonable efforts requirements are not limited only to where the mailed notice is returned, but are triggered where there are "other circumstances [that] **rais[e] a significant doubt as to the actual receipt** of such notification by the named addressee. . . ." 72 P.S. § 5860.607a(a) (emphasis added). In this instance, after the personal service was unsuccessful, the Bureau received permission to use alternative service via publication and First-Class Mail but then mailed the Petition to Sell and Rule on March 10, 2017, to the same address that the sheriff's deputy had earlier indicated in the Sheriff's Return was vacant.[13] When Ms. Brown or a representative did not appear at the March 16, 2017 hearing on the Rule, her absence, in addition to the knowledge that the Property was vacant, should have "rais[ed] a significant doubt as to the actual receipt of [the Petition to Sell and Rule] by [Ms. Brown]" so as to trigger the Bureau's obligation to exercise reasonable efforts to discover her whereabouts under Section 607.1(a). *Id.*

Third, the record is devoid of evidence that the Bureau took any reasonable efforts to find Ms. Brown in accordance with Section 607.1(a). The Bureau did not, and does not, make notations in its files to reflect what efforts were made, which is contrary to Section 607.1(a). And, while Claims Processor described what she did to find an unknown property owner and what the Bureau's general practice was, she could not say what efforts were made to find Ms. Brown in this matter because this

---

[13] While common pleas stated that such service would be sufficient, it cannot be consistent with due process for the Bureau to mail the Petition to Sell and Rule to a property that the Bureau **knows** is vacant and then sell the property without waiting to see if the mail was returned as undeliverable thereby requiring the Bureau to take reasonable efforts to ascertain the owner's whereabouts.

was not her file and there were no notations therein. Therefore, the Bureau did not meet its burden of showing compliance with the Law.[14]

Finally, under these facts, there is a real question of whether common pleas complied with its obligations under Section 612 of the Law. Per *Manu*, common pleas was obligated to make an "an independent inquiry," 76 A.3d at 605, to determine if the Law's requirements were strictly satisfied prior to approving the judicial sale of the Property. However, its approval of the Property's sale was given within **days** of when the notice had been mailed, without requiring the Bureau to wait a sufficient period of time to ensure that the mail was not returned, and despite Ms. Brown or a representative not appearing at the hearing on the Rule.

Because the Bureau did not comply with the Law's service and notice requirements, common pleas lacked jurisdiction to direct the judicial sale of the Property. Therefore, common pleas' March 20, 2017 order directing the sale of the Property is null and void, and the judicial sale of the Property must be set aside. *Manu*, 76 A.3d at 606-07; *Serrino*, slip op. at 12, 14; *Rinaldi*, 22 A.3d at 313.[15]

## IV. CONCLUSION

While we are cognizant of the need to ensure the collection of taxes, we are left to wonder, based on this record, whether the Bureau has "lost sight of the fact that it is a momentous event under the United States and the Pennsylvania

---

[14] The swiftness of the Bureau's actions raises questions regarding how it undertakes its obligations when exposing a property to judicial sale, particularly where it admittedly does not follow even the requirement that it make notations of the reasonable efforts it takes with regard to locating a property owner. The Bureau's actions do not seem to provide notice of an impending judicial sale and, instead, it here relies on the very short limitations period applicable to judicial sales to insulate its actions from review.

[15] Because of this disposition, it is not necessary to address whether the statute of limitations began to run on the recording of the deed.

Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes." *Tracy*, 489 A.2d at 1339. The Law, which incorporates the principles of due process, requires that notice of judicial sales be provided to a property's owner, among others, and the Law sets forth what notice is reasonably required prior to the sale of a property at judicial sale. Where, as here, a tax sale requires prior court approval, the Court has repeatedly and consistently applied the principles that the notice requirements are jurisdictional, that noncompliance with those requirements leaves the approving court without jurisdiction, and that a sale directed under these circumstances is void *ab initio*. Here, the Bureau did not comply with its obligations under the Law's notice requirements, leaving common pleas without jurisdiction to direct the judicial sale of the Property, and that sale must be set aside. Accordingly, common pleas' Order is reversed.

_____

**RENÉE COHN JUBELIRER,** Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Sale of Real Estate by<br>Lackawanna County Tax Claim Bureau | : | |
| | : | |
| | : | |
| Judicial Tax Sale Property Situate at<br>911 Albright Avenue Scranton, PA<br>18508 | : | No. 1346 C.D. 2019 |
| | : | |
| | : | |
| | : | |
| Tax Map No. 14508-040-030 | : | |
| | : | |
| | : | |
| Real Owner: Gloria Brown | : | |

## **O R D E R**


    **NOW**, May 10, 2021, the Order of Court of Common Pleas of Lackawanna County, entered in the above-captioned matter, is **REVERSED**.


                                             _____

                                             **RENÉE COHN JUBELIRER,** Judge